Brewster Shirt Corporation v. Commissioner.
Brewster Shirt Corp. v. Commissioner
Docket No. 6051.
United States Tax Court
1945 Tax Ct. Memo LEXIS 102; 4 T.C.M. (CCH) 834; T.C.M. (RIA) 45272; August 13, 1945
Joseph Kantor, C.P.A., for the petitioner. Clay C. Holmes, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion In this proceeding the respondent has determined a deficiency in petitioner's excess-profits tax for the year 1941 in the amount of $3,148.92. This deficiency arises by reason of respondent's determination that petitioner's indebtedness to Mill Factors Corporation *103 did not constitute borrowed capital for the year 1941 within the meaning of section 719 of the Internal Revenue Code. Findings of Fact The petitioner is a corporation organized under the laws of New York. It was organized in 1931 by one H. B. Kruger who invested at that time some $40,000 which represented the entire investment of petitioner. Thereupon petitioner purchased a factory to manufacture its product in Danbury, Conn., and its investment therein was approximately $18,000. As a result of the small amount of working capital left to the petitioner, it was difficult for it to obtain merchandise and operate its business. Thereupon Mr. Kruger, on behalf of petitioner, attempted to borrow capital from various banks. This effort was unsuccessful and the only way that petitioner could get the credit necessary to operate its business was to borrow money from a Factor on accounts receivable. On or about March 24, 1938, the petitioner entered into a contract with Mill Factors Corporation, the provisions of which are as follows: "FIRST: Where terms of sale to customers shall first have been approved by the Factor in writing, and the accounts receivable assigned *104 to the Factor, all as in this agreement provided for, the Factor will purchase said accounts receivable subject to the terms and conditions hereinafter set forth, at their net face value, less trade discounts and commissions. Brewster is to pay interest for all additional time taken by its customers in the payment of their bills, provided such interest is not paid by customer. "Payment for assigned accounts to be made by the Factor to Brewster as follows: "Ninety percent (90%) at any time after acceptance and assignment, and the balance upon payment of the account. "SECOND: Goods shall be invoiced by Brewster on invoice forms approved by the Factor. "THIRD: Brewster shall furnish to the Factor such evidence of delivery of goods to Brewster's customers and acceptance thereof by them as the Factor shall require. "FOURTH: As collateral security for any and all sums which may now or hereafter be due from Brewster to the Factor, Brewster further and hereby assigns to the Factor, except as noted below, all accounts receivable, bills receivable and other evidences of indebtedness arising from sales or created in the course of Brewster's business, and Brewster hereby grants to the *105 Factor a lien thereon, and upon any and all merchandise of Brewster, the sale of which has resulted in such accounts receivable. Brewster agrees to execute any further form of assignment which may be required by the Factor. The exception refers to all export shipments and also sales made on terms of 10 days or less, which latter may, at Brewster's option, be eliminated from the terms of this agreement. "In the event that there are carried on the books of either Brewster or the Factor two or more separate accounts covering transactions under this agreement, and/or in the event that there may be any contracts in addition to this agreement between Brewster and the Factor, and in the event that at any time there shall be in any one or more accounts so carried an equity or credit balance in favor of Brewster, and in any one or more of said accounts a debit balance, it is expressly agreed that at any time at the option of the Factor any such equity or equities may be applied against any such debit or debits interchangeably among all of the accounts between Brewster and the Factor without prior notice thereof to Brewster. "FIFTH: An accounting shall be rendered to Brewster monthly covering *106 transactions of previous month, and interest shall be charged and credited therein at the rate of six percent (6%) per annum. "SIXTH: Brewster agrees to report to the Factor immediately all claims and returns. "SEVENTH: The Factor shall have no responsibility for claims by customers for imperfections, terms of sale, breach of warranty, defect in goods, breach of contract or for a refusal to pay the full purchase price of goods for any reason whatsoever. "EIGHTH: Brewster hereby irrevocably constitutes and appoints Max Yankauer, William H. Stonaker, Samuel Schiffer and each of them its true and lawful attorneys, for it and in its name and with full powers in the premises, including the power of substitution, to endorse the name of Brewster to any check, note, draft or other form of remittance which shall under the terms of this agreement or otherwise, in the course of the business relations of Brewster with the Factor, come into the possession of Brewster or the Factor, and to deposit such checks, notes, drafts or other form of remittance in any depository of the Factor to the credit of the Factor and for its sole use and benefit. "NINTH: Brewster assumes all credit risks in *107 connection with the sales made by it hereunder. Brewster shall pay to the Factor upon its request, or, at the option of the Factor, the same may be deducted from any amounts due or to become due on other accounts previously or subsequently assigned, the amount of any account which shall be disputed in whole or in part or where the merchandise through the sale of which such assigned account has resulted or is represented to have resulted, is for any reason not finally accepted by the customer and the amount of any account the debtor owing which shall fail or become insolvent, make a general assignment, have a receiver appointed, or become a party to any proceeding in bankruptcy in which its adjudication in bankruptcy is sought, or for an extension of time to pay its debts pursuant to Section 74 or 77-b of the Bankruptcy Act, or, in any event, where an assigned account shall be more than twenty days past due, plus the Factor's commission and all other charges incurred by it hereunder in connection therewith, and thereupon the Factor will reassign such account to Brewster. "TENTH: All returned merchandise shall be held in trust by Brewster for the Factor until the amount advanced upon *108 the account in dispute shall have been repaid. "ELEVENTH: The Factor may refuse to purchase an account at any time prior to the acceptance of the goods by a customer, and in such event the Factor shall not be liable for any failure to deliver the merchandise or in any other respect. "TWELFTH: For its services hereunder the Factor shall charge and receive a commission of three-quarters of one percent (3/4 of 1%) upon the amount of all net sales of Brewster assigned to the Factor hereunder, said commission to be chargeable as of the middle of the month. "It is understood that Brewster is to reimburse the Factor for any postage outlays made for Brewster's account. "THIRTEENTH: Anything herein to the contrary notwithstanding, the Factor shall have the right to terminate this agreement and all indebtedness of Brewster to the Factor shall immediately become due and payable upon the adjudication of Brewster in bankruptcy, the appointment of a Receiver or Trustee for its property, its declared insolvency, the filing of a petition by or against Brewster for a reorganization or compromise or an extension of time to pay its debts, pursuant to Section 74 or 77-b of the Bankruptcy Act, *109 or upon the breach by Brewster of any term of this agreement. "FOURTEENTH: If at the termination of this agreement there is any money owing to the Factor, the same shall be paid by Brewster, upon request, otherwise the Factor may sell any collateral held by it at public sale, with ten days' notice to Brewster. The net proceeds thereof after deduction of all costs of sale, commissions and charges, including legal expenses, shall be applied to the indebtedness of Brewster hereunder. Any surplus shall be turned over to Brewster, but if there be a deficit, Brewster shall remain liable. At its option, the Factor may, in lieu of selling any or all of the accounts receivable, collect such of the accounts receivable as it may choose, charging to Brewster all expenses of collection, including legal expenses, and apply the net proceeds thereof to the indebtedness of Brewster to the Factor hereunder. "FIFTEENTH: This agreement expresses the entire understanding between the parties. Failure of the Factor to exercise any rights hereunder, or upon any breach or default, shall not be deemed a waiver thereof in the event of other or further breaches or defaults. The remedies of the Factor shall *110 be deemed to be cumulative and not exclusive. "SIXTEENTH: The term of this agreement shall be from the 1st day of June, 1938, or sooner, at Brewster's option, and shall continue until the 31st day of December, 1938, and from year to year thereafter unless either party shall give two months' notice in writing to the other by registered mail of an intention to terminate the same on the 31st day of December in any year, commencing 1938. "SEVENTEENTH: This agreement shall be binding upon and inure to the benefit of each of the parties hereto and their respective legal representatives, successors and assigns, and shall be interpreted according to the laws of the State of New York." * * * * *
Pursuant to this agreement the petitioner assigned accounts receivable to the Factor during the taxable year and obtained money from the Factor on account thereof. The form of said assignment was as follows: For value received, we hereby sell, assign, transfer and set over unto Mill Factors Corporation, its successors and assigns the accounts receivable indicated below and all of our right, title and interest in and to any merchandise therein described that may be returned to us and we *111 hereby guarantee to said Mill Factors Corporation that such accounts are just and true, that no payments have been made on account thereof, that there are no defenses, counterclaims or offsets thereto, that the terms of credit are as specified therein and that no part of these accounts has been assigned, transferred or in any other manner encumbered, except as therein stated. This assignment is made pursuant to the agreement between us and Mill Factors Corporation dated 3/24/38." At the end of each month a statement was submitted by the Factor to petitioner showing balance of the amount advanced by the Factor to petitioner. The daily average balance of these advances in the year 1941 was $176,989.69. Petitioner never signed any notes, bills of exchange, debentures, certificates of indebtedness, mortgages or deeds of trust evidencing its indebtedness to Mill Factors Corporation. It is not customary for notes to be executed by one obtaining money from a Factor because of the constant fluctuations in the balance of the account due the Factor. Opinion KERN, Judge: The question here presented is whether the account of petitioner with Mill Factors Corporation constituted borrowed invested *112 capital within the meaning of Section 719 of the Internal Revenue Code, the pertinent part of which is set out in the margin. [1]
It is petitioner's contention that the agreement with Mill Factors Corporation and the various assignments of accounts receivable described and set forth in our Findings were, in effect and in reality, notes or bills of exchange within the meaning of the quoted section of the Internal Revenue Code. With this contention we are unable to agree. Under the authority of Journal Publishing Co., 3 T.C. 518; William A. Higgins and Co., Inc., 4 T.C. 1033, and Flint Nortown Theatre Co., 4 T.C. 536.
*113 Decision will be entered for respondent. Footnotes
1. SEC. 719. BORROWED INVESTED CAPITAL. (a) Borrowed Capital. - The borrowed capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following: (1) The amount of the outstanding indebtedness (not including interest, and not including indebtedness described in section 751 (b) relating to certain exchanges) of the taxpayer which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage or deed of trust, * * *↩